ORWELL NATURAL GAS COMPANY, INC., Appellant,

v.

PCC AIRFOILS, L.L.C., Appellee.

[Cite as *Orwell Natural Gas Co., Inc. v. PCC Airfoils, L.L.C.*, 189 Ohio App.3d 90, 2010-Ohio-3093.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 94181.

Decided July 1, 2010.

Dworken & Bernstein Co., L.P.A., and Erik L. Walter, for appellant.

Frantz Ward, L.L.P., M. Neal Rains, and Colleen C. Murnane, for appellee.

———————.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} Appellant, Orwell Natural Gas Company, Inc. ("Orwell"), challenges the confirmation of an arbitration award in favor of appellee, PCC Airfoils, L.L.C. ("PCC"). The dispute stems from a contract for the transport of natural gas and PCC's decision to use an alternate means of transport. After a thorough review of the record, we affirm the decision of the lower court.

{¶ 2} On February 8, 2008, the two parties entered into a contract for the transport of natural gas to PCC's Painesville, Ohio manufacturing facility. The contract took the form of a three-page document signed at the end and followed by an exhibit of ten pages of terms and conditions. In this contract, Orwell agreed to transport natural gas to PCC's manufacturing facility located on Renaissance Parkway in Painesville (the "Renaissance facility"). Soon after entering into the agreement, PCC began negotiating with another company for an agreement covering all of PCC's facilities in a certain geographic area. On June 20, 2008, PCC informed Orwell that it would no longer be using Orwell's gas pipelines for the transport of natural gas.

{¶ 3} In August 2008, Orwell sought a temporary restraining order in the Lucas County Court of Common Pleas barring PCC from using other means of transport. The parties agreed to a restraining order and to submit their dispute to arbitration in Cuyahoga County, Ohio pursuant to an arbitration clause in the contract, and further agreed to continue the restraining order with PCC using Orwell's supply lines for the transport of natural gas while the arbitration proceedings were pending.

{¶ 4} During the arbitration, PCC argued that the contract was ambiguous and that extrinsic evidence was required to properly interpret the contract. Orwell argued that the contract was an unambiguous "full requirements" integrated agreement that PCC intended to breach by receiving natural gas from another transporter.[1] The arbitrator determined that there were material ambiguities in the contract and allowed the introduction of extrinsic evidence to interpret the location of facilities covered and the exclusivity of the agreement. The arbitrator found that the extrinsic evidence demonstrated that PCC had requested that the "full requirements" language be removed from the front three-page section of the

———

1. A requirements contract is "[a] contract in which a buyer promises to buy and a seller to supply all the goods or services that a buyer needs during a specified period. * * * A requirements contract assures the buyer of a source for the period of the contract." Black's Law Dictionary (8th Ed.2004). This is also referred to as the exclusivity of the contract in this opinion.

contract and, as a result, they did not bargain for an exclusive agreement with Orwell. The arbitrator ruled in favor of PCC and dissolved the restraining-order agreement.

{¶ 5} On January 16, 2009, Orwell sought to have the arbitrator's decision vacated in the Cuyahoga County Common Pleas Court, and PCC petitioned the court to have the arbitrator's award confirmed. On October 6, 2009, the trial court granted PCC's motion confirming the arbitrator's decision, finding that "[t]he arbitrators did not depart from the essence of the contract by conflicting with the express terms of the agreement nor did the decision lack rational support as derived from the terms of the contract."

{¶ 6} Orwell now appeals the denial of their motion to vacate, modify, or correct the arbitration award, claiming that the "[t]rial court erred when it granted appellee's motion to confirm [the] arbitration award and denied appellant's motion to vacate, modify or correct [the] arbitration award."

## Law and Analysis

### Review of an Arbitral Determination

{¶ 7} When faced with a motion to vacate an arbitration award, a court is limited in its review. *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975), 42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703. A common pleas court is limited to ascertaining whether fraud, corruption, misconduct, arbitration impropriety, or evident mistake made the award unjust or unconscionable. *Russo v. Chittick* (1988), 48 Ohio App.3d 101, 548 N.E.2d 314. The trial court has the power to vacate an arbitration award only upon certain enumerated grounds set forth in R.C. 2711.10.

{¶ 8} Appellate review of an arbitral proceeding is confined to an evaluation of the order issued by the trial court pursuant to R.C. 2711.10. The substantive merits of the original arbitration award are not reviewable on appeal absent evidence of material mistake or extensive impropriety. *Lynch v. Halcomb* (1984), 16 Ohio App.3d 223, 16 OBR 238, 475 N.E.2d 181. A de novo review of the merits of the dispute is not within the contemplation of the statute. *Buyer's First Realty, Inc. v. Cleveland Area Bd. of Realtors* (2000), 139 Ohio App.3d 772, 784, 745 N.E.2d 1069. "As a result, once a reviewing court determines that the arbitrator's award draws its essence from the parties' contract and is not unlawful, arbitrary or capricious, the reviewing court has no authority to vacate the award pursuant to R.C. 2711.10(D)." *Marra Constructors, Inc. v. Cleveland Metroparks Sys.* (1993), 82 Ohio App.3d 557, 563, 612 N.E.2d 806, citing *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186.

{¶ 9} Orwell argues that the trial court erred in overruling its motion to vacate or modify based on R.C. 2711.10(D), which states that "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶ 10} Under R.C. 2711.10(D), an error of fact or law by an arbitrator does not provide a basis for vacating an arbitration award. *Goodyear,* 42 Ohio St.2d at 522, 71 O.O.2d 509, 330 N.E.2d 703. If parties could challenge an arbitration decision on the grounds that the arbitrators erroneously decided legal or factual issues, no arbitration would be binding. *Ungar v. Ormsbee* (Feb. 11, 2002), Stark App. No. 2001CA00210, 2002 WL 221973.

{¶ 11} The fact that a trial court might arrive at a different conclusion from the arbitrator is also immaterial. *Motor Wheel Corp. v. Goodyear Tire & Rubber Co.* (1994), 98 Ohio App.3d 45, 647 N.E.2d 844. The trial court is bound by an arbitrator's factual findings and serves only as a mechanism to enforce the arbitrator's award. *Warren Edn. Assn. v. Warren City Bd. of Edn.* (1985), 18 Ohio St.3d 170, 18 OBR 225, 480 N.E.2d 456.

### Discretion of an Arbitrator

{¶ 12} Orwell takes issue with the decision of the arbitrator to allow extrinsic evidence to interpret the contract, contrary to the parol evidence rule. Normally, " '[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.' " *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, quoting 3 Corbin, Corbin on Contracts (1960) 357, Section 573. This rule "serves to ensure the stability, predictability, and enforceability of finalized written contracts." *Williams v. Spitzer Autoworld Canton, L.L.C.,* 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 14. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 635, 597 N.E.2d 499.

{¶ 13} Section 1.1 of Exhibit A of the instant contract states, "Customer shall arrange with suppliers of Customer's selection to have Gas meeting the full requirements *for its manufacturing facilities located in Lake County, Ohio* served through the Delivery Point * * *." (Emphasis added.) The first page of the agreement contains a provision that states, "Customer has agreed to trans-

port natural gas for its *manufacturing facility located at Renaissance Parkway in Painesville, Ohio.*" (Emphasis added.)

{¶ 14} Orwell argues that the first few pages of the 13–page contract are a preamble, a perfunctory statement that simply introduces the parties and subject matter. However, these pages are more than that. They set forth a few material terms, such as location of delivery, and provide the only section that binds PCC to the later terms and conditions set forth in Exhibit A. According to the extrinsic evidence submitted by the parties, ambiguities arose in the contract as a result of changes in the agreement, which initially was to transport natural gas to two of PCC's facilities in Lake County, Ohio. PCC also requested that the "full requirements" language be removed from the first page of the agreement.

{¶ 15} Contrary to Orwell's argument, the arbitrator did not refuse to apply the parol evidence rule, but found that an exception to this rule applied. The arbitrator found that the contract was ambiguous, and extrinsic evidence should be allowed to explain the ambiguity. "When a provision in a collective bargaining agreement is subject to more than one reasonable interpretation and the parties to the contract have agreed to submit their contract interpretation disputes to final and binding arbitration, the arbitrator's interpretation of the contract, and not the interpretation of a reviewing court, governs the rights of the parties." *Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1990), 52 Ohio St.3d 174, 177, 556 N.E.2d 1186.

{¶ 16} The extrinsic evidence demonstrated that PCC asked Orwell to remove the exclusivity language from the first three pages of the agreement. The agreement also changed from servicing all of PCC's facilities in Lake County to supplying natural gas only to the Renaissance facility. The arbitrator's interpretation of the contract is not so far outside of the bounds of logic or law that this court could determine that it "cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL–CIO* (1991), 59 Ohio St.3d 177, 572 N.E.2d 71, syllabus.

{¶ 17} While this court may reach a different conclusion regarding whether the contract was ambiguous as to the exclusivity of the agreement, that alone is not grounds for vacating the arbitral determination because the decision of the arbitrator is not unreasonable, unconscionable, or arbitrary. *Motor Wheel Corp.*, 98 Ohio App.3d 45, 647 N.E.2d 844.

{¶ 18} Orwell cites *Middletown v. Internatl. Assn. of Firefighters, Local No. 336* (June 30, 1997), Butler App. No. CA96–12–0259, 1997 WL 366839, for the proposition that this court should engage in its own analysis of whether the contract is ambiguous. This Twelfth District case, relying on *Ohio Office*, found that a reviewing court should determine whether a given contract term is

ambiguous. *Ohio Office* does not go that far. It deals with an arbitrator engrafting an additional term into an agreement that was not provided for in the contract and that was in direct contravention of an express term in the agreement. This is a different situation from the one faced here, where the issue is whether to permit extrinsic evidence to explain a contract provision that one party argues is ambiguous. The arbitrator did not ignore the parol evidence rule, as Orwell argues. The arbitrator asked for briefs from the parties outlining why the contract was or was not ambiguous. He considered these arguments and determined that the contract was ambiguous. The arbitrator's decision to allow extrinsic evidence does not create a new contract provision, which the court objected to in *Ohio Office* when it held that "the arbitrator grafted a just-cause requirement onto the clause governing termination for abuse, thereby violating the clear and unambiguous terms expressed in the agreement." Id. at 182–183, 572 N.E.2d 71.

{¶ 19} The arbitrator's decision draws its essence from the agreement of the parties. Unless the arbitrator's decision flies in the face of an unambiguous contractual provision, as it did in *Ohio Office,* this court is not free to substitute its determination for that of the arbitrator. See *Hillsboro,* 52 Ohio St.3d at 178, 556 N.E.2d 1186, fn. 5 ("A judge reviewing an arbitrator's award may completely disagree with the arbitrator's interpretation of the contract. However, the degree of judicial restraint necessary for a reviewing court to exercise in reviewing an arbitrator's award may, nevertheless, require the judge to deny a motion to vacate the arbitrator's award").

## Conclusion

{¶ 20} It is conceivable that the provision in question is ambiguous. The arbitrator specifically engaged in an analysis of this issue and ruled that the contract was ambiguous. This court should not conduct its own de novo analysis of the contract. To do so would be to give no deference to the arbitrator's determination and contravene important policy considerations preserving the utility of arbitration.

Judgment affirmed.

BOYLE, P.J., concurs.

COONEY, J., concurs in judgment only.